IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Asheville Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **GEORGE B. HYLER, JR.** | ) | Case No. 18-10267 |
| | ) | |
| Debtor. | ) | |

## DISCLOSURE STATEMENT

Dated: Charlotte, North Carolina
       October 23, 2018

MOON WRIGHT & HOUSTON, PLLC
Richard S. Wright (NC State Bar No. 24622)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Debtor*

# ARTICLE I
# INTRODUCTION AND OVERVIEW

**NO REPRESENTATIONS CONCERNING THE DEBTOR, HIS ASSETS, OR HIS LIABLITIES, OTHER THAN THOSE SPECIFICALLY SET FORTH HEREIN, HAVE BEEN AUTHORIZED BY THE DEBTOR.**

A. **GENERAL**

On June 25, 2018, George B. Hyler, Jr. (the "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), with the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"), bearing Case No. 18-10267.

The Honorable George R. Hodges, United States Bankruptcy Judge, presides over the Debtor's bankruptcy case (referred to as the "Chapter 11 Case" when applicable). The Debtor continues in possession of his properties and the management of his affairs as "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

Contemporaneously herewith, the Debtor has filed his Plan of Reorganization pursuant to § 1121(a) of the Bankruptcy Code (the "Plan"). The Plan sets forth the proposed reorganization of the Debtor's chapter 11 estate (the "Estate") and the distribution of recoveries to creditors (collectively, the "Creditors") of the Debtor's Estate. A copy of the Plan is attached as <u>Exhibit A</u> to this disclosure statement (the "Disclosure Statement"). Pursuant to § 1126 of the Bankruptcy Code, the Debtor is soliciting acceptances of the Plan from the classes of Claims entitled to vote on the Plan. This Disclosure Statement is submitted pursuant to § 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of its right to vote on the Plan.

B. **PURPOSE OF DISCLOSURE STATEMENT**

The Debtor provides this Disclosure Statement in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan. The Disclosure Statement is presented to all Creditors in order to satisfy the requirements of § 1125 of the Bankruptcy Code. Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon for any purpose other than that described above.

This Disclosure Statement and the Plan are an integral package, and they must be considered together for the reader to be adequately informed.

No representations concerning the Debtor or the value of his property are authorized by the Debtor other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtor, who will deliver such information to the Bankruptcy Court for such action as may be appropriate.

The information contained in this Disclosure Statement, including the information contained in the exhibits attached hereto, has not been subject to an audit or independent review. Accordingly, the Debtor is unable to warrant or represent that the information concerning the Debtor or his financial condition is accurate or complete.  Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only, and because of the uncertainty and risk factors involved, the Debtor's actual results may not be as projected herein.

Although an effort has been made to be as accurate as possible under the circumstances, the Debtor does not warrant or represent that the information contained in this Disclosure Statement is correct.  The Disclosure Statement contains only a summary of the Plan.  Each Creditor who is entitled to vote on the Plan is urged to review the Plan prior to casting its vote.

The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement unless another time is specified.  The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the date of the Disclosure Statement.

Schedules of the assets and liabilities of the Debtor as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with § 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable nonbankruptcy law.  Entities holding or trading in or otherwise purchasing, selling, or transferring Claims against, interests in, or securities of the Debtor should evaluate this Disclosure Statement only in light of the purpose for which it was prepared.

This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable George R. Hodges will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") in the United States Bankruptcy Court, 100 Otis Street, Asheville, North Carolina on _____ 2018, at 9:30 a.m.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of the Creditors, and will review the ballot reports concerning votes cast for acceptance and rejection of the Plan.

C. **BRIEF OVERVIEW OF THE DEBTOR AND THE PLAN**

   1. **Description of the Debtor**

The Debtor is an individual residing in Asheville, North Carolina.  The Debtor's primary assets are his home, two tracts of vacant land, and two commercial parcels, all in Buncombe County.  Together, the Debtor's real property is valued at over $6.5 million.  The Debtor's two tracts of vacant land and two commercial parcels are encumbered by deeds of trust in favor of HomeTrust Bank with a principal balance on the two underlying notes alleged to be over $2.2 million.  Additionally, the prior owner of one of the commercial properties holds a subordinated deed of trust related to a seller financing transaction with the Debtor.  The payoff on the underlying note is approximately $1.5 million.

The Debtor is the majority partner of a law firm that was incorporated in 1990 and is also located in Asheville, North Carolina. The firm operates from office space rented from the Debtor. In addition to his salary from the firm and revenue generated by his real property holdings, the Debtor receives Social Security benefits.

### 2.      **Reasons for the Chapter 11 Filing**

HomeTrust's two notes are cross collateralized. After the Debtor allegedly failed to meet his obligations on one of the notes when it matured, HomeTrust declared both to be in default. When negotiations with HomeTrust were unsuccessful, the Debtor filed the Chapter 11 Case to stay an ongoing foreclosure action to maximize the value of assets to be surrendered and to structure an orderly plan to satisfy the Claims of Creditors from his future income.

### 3.      **The Proposed Reorganization of the Debtor's Estate**

Pursuant to the Plan, each holder of an Allowed Secured Claim (other than HomeTrust) will receive periodic payments with interest, based on the value of its underlying collateral, until each Allowed Secured Claim is fully satisfied. HomeTrust will receive the indubitable equivalent of its Allowed Secured claim through a combination of collateral surrender and installment payments. All Allowed Unsecured Claims will be either (i) paid in full shortly after the Effective Date or (ii) paid in full through three annual installments of principal and interest. The Debtor's employment and rental income is sufficient to meet his family's post-confirmation living expenses and leave funds available to make these distributions to Creditors.

The Debtor reserves the right to resort to the "cram down" provisions of Section 1129(b) of the Bankruptcy Code, *and the filing of the Plan shall constitute a motion for such relief*.

### D.      **DISTRIBUTIONS UNDER THE PLAN**

Summaries of the classification and treatment of Claims under the Plan, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Article III of this Disclosure Statement below. However, the amounts listed are merely the Debtor's estimates based on information available as of the filing of this Disclosure Statement. The actual amounts could be substantially different, causing the ultimate distributions to creditors to be higher or lower than estimated.

CREDITORS AND OTHER PARTIES IN INTEREST ARE URGED TO REVIEW THE CONTENTS OF THE PLAN ITSELF, WHICH IS ATTACHED AS <u>EXHIBIT A</u> TO THIS DISCLOSURE STATEMENT IN ITS ENTIRETY.

The reorganization of the Debtor's Estate under the Plan will ensure at least an equivalent return to creditors than they would receive if the Estate were to be liquidated under chapter 7 of the Bankruptcy Code. For a more detailed explanation, please refer to Article V of this Disclosure Statement below. To the extent that any provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

For a more detailed description of the terms and provisions of the Plan, please refer to Article III below and the Plan itself.

E.     **CREDITORS ENTITLED TO VOTE ON THE PLAN**

Holders of Claims in Classes 1 and 3-7 are impaired by the Plan and, as such, the Debtor is soliciting votes from holders of Allowed Claims in these classes as set forth in Article 4 of the Plan.

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the Debtor. However, the Debtor may seek to "cram down" the Plan pursuant to § 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan. (For more information on "cram down," please refer to Article V, Section C below). The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of Allowed Claims that are actually voted.

F.     **INSTRUCTIONS REGARDING VOTING, CONFIRMATION, AND OBJECTIONS TO CONFIRMATION**

1.     **Voting Instructions**

**BEFORE VOTING, YOU SHOULD READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS, INCLUDING THE PLAN AND ITS EXHIBITS, IN THEIR ENTIRETY. BALLOTS MUST BE RECEIVED NO LATER THAN _____, 2018.**

You may vote on the Plan by completing and mailing the enclosed Ballot to:

> Moon Wright & Houston, PLLC
> Attention: Richard S. Wright
> 121 West Trade Street, Suite 1950
> Charlotte, North Carolina 28202

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan. You may NOT cast ballots or votes orally. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the date designated above. If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting Moon Wright & Houston, PLLC at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. In addition, the record date of all Claims against the Debtor for voting purposes shall be _____, 2018. Persons holding Claims transferred by any means after such date will *not* be permitted to vote on the Plan. An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are *actually voted* are cast in favor of the Plan. Subject to the terms of the Plan, Claimants who do not vote are not counted as having voted either for or against the Plan. Pursuant to the provisions of § 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a Distribution under the Plan.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estate was liquidated under chapter 7 of the Bankruptcy Code.

The Debtor may dispute Proofs of Claim that have been filed or that the Debtor listed as disputed in its Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may participate in, Distributions under the Plan *only* to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, Charles Jonas Federal Building, 401 West Trade Street, Room 111, Charlotte, North Carolina.

The Bankruptcy Court established September 4, 2018 as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case, except for governmental units. The deadline for governmental units to file a proof of claim is 180 days from the date of the voluntary petition, the order for relief, or conversion, whichever is later.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does *not* necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

### 2. **Confirmation of the Plan**

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in § 1129(a) of the Bankruptcy Code satisfied.

The Bankruptcy Court may confirm the Plan, even if all of the impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, the Debtor will seek confirmation of the Plan as to such non-accepting Classes pursuant to § 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision. The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of § 1129(b)(2)(A) of the Bankruptcy Code. The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class will receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3. **Objections to Confirmation**

Any objections to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served upon (a) Richard S. Wright, Moon Wright & Houston, PLLC, 121 West Trade

Street, Suite 1950, Charlotte, North Carolina 28202; and (b) the United States Bankruptcy Administrator, 402 West Trade Street, Charlotte, North Carolina 28202, in such a manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties by _____, 2018.

### 4. Confirmation Hearing

A hearing on confirmation of the Plan is scheduled before the Honorable George R. Hodges, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of North Carolina, 100 Otis Street, Asheville, North Carolina on _____ 2018, at 9:30 a.m. Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court. No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

## ARTICLE II
## BACKGROUND INFORMATION REGARDING THE DEBTOR

### A. COMMENCEMENT OF THE CHAPTER 11 CASE

#### 1. Filing of the Petition

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 25, 2018.

#### 2. Debtor in Possession; Effect of Bankruptcy Filing

Following commencement of the Chapter 11 Case, the Debtor has continued to manage his business and affairs as debtor in possession, subject to the oversight of the Bankruptcy Court. Upon the filing of the chapter 11 petition, substantially all claims against the Debtor that existed prior to the Petition Date became subject to the automatic stay provisions under § 362 of the Bankruptcy Code. These pre-petition claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

### B. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

#### 1. Filing of Schedules

The Debtor filed his Schedules of Assets and Liabilities, and his Statement of Financial Affairs on July 23, 2018 (collectively, the "Schedules").

#### 2. Retention of Professionals by the Debtor

The Debtor is represented by Moon Wright & Houston, PLLC as bankruptcy counsel in connection with the Chapter 11 Case.

#### 3. Bar Date for Filing of Claims

The Bankruptcy Court established September 4, 2018 (the "Claims Bar Date") as the deadline by which all proofs of Claim must be filed in this Chapter 11 Case, except for governmental units. The deadline for governmental units to file a proof of claim is 180 days from

the date of the voluntary petition, the order for relief, or conversion, whichever is later. The Clerk of the Bankruptcy Court transmitted notices of the Bar Date to all known actual or potential claimants and informed them of their need to file a Claim with the Bankruptcy Court on or before the Claims Bar Date.

## ARTICLE III
## THE DEBTOR'S PLAN OF REORGANIZATION

**THE FOLLOWING IS A SUMMARY OF THE PROVISIONS OF THE PLAN AND, ACCORDINGLY, IS NOT AS COMPLETE AS THE FULL TEXT OF THE PLAN THAT ACCOMPANIES THIS DISCLOSURE STATEMENT. THE PLAN ITSELF, ATTACHED AS EXHIBIT A HERETO, SHOULD BE READ IN ITS ENTIRETY.**

A. **SUMMARY OF PAYMENT PROVISIONS OF THE PLAN**

   1. **Impairment of Claims**

Under the Bankruptcy Code, a class of claims or interests is deemed "impaired" under a chapter 11 plan unless, in general, the rights of the holders of the claims or interests of such class are not altered or, with respect to interests, the holders receive cash equal to the greater of (a) any liquidation preference or (b) the redemption price, if either is applicable. Any class that is deemed impaired must accept the plan by the requisite majority before the plan can be confirmed, unless the Bankruptcy Court finds, pursuant to § 1129(b) of the Bankruptcy Code, that the plan is fair and equitable and does not discriminate unfairly with respect to each class that is impaired and has not accepted the plan.

   2. **Treatment of Claims**

The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims relating to the Debtor and other Persons, as applicable, as specified in the Plan.

B. **CLASSIFIED CLAIMS UNDER THE PLAN**

The Plan divides the Claims against the Debtor into various Classes and designations. Below is a description of the general Classes and designations of claims against the Debtor and the corresponding treatment thereof under the Plan. Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as classes of Claims for purposes of the Plan pursuant to Sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

Holders of Claims should consult this listing when completing the enclosed Ballot. **Holders of Claims of $250 or less should also refer to Part C, below, regarding their inclusion in the Administrative Convenience Class**.

All amounts listed for each Class of Claims are merely estimates, subject to change through the Debtor's claims review and objection process. All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

**C.      OPTION FOR INCLUSION IN ADMINISTRATIVE CONVENIENCE CLASS**

Class 6 consists of the Unsecured Convenience Claims, which are those Claims in amounts of $250.00 or less each. The holder of a Claim in excess of this amount may, at its option, elect to have its Claim treated in Class 6 by marking the same on the enclosed Ballot. The maximum amount to be distributed by the Reorganized Debtor on account of an Allowed Class 6 Claim is $250.00. A Creditor which elects to have its Claim treated in Class 6 will receive no other distribution except as specifically provided for the Allowed Unsecured Convenience Claims.

[Remainder of Page Intentionally Left Blank]

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*<br><br>An Allowed Administrative Claim is any cost and expense of administration of the Chapter 11 Case entitled to priority in payment under § 507(a)(1) of the Bankruptcy Code, or as may be allowed by Final Order of the Bankruptcy Court.<br><br>The Debtor estimates that, after completion of the claim reconciliation process, and excluding any cure amounts related to assumption of executory contracts and leases, the amount of Allowed Administrative Claims will be: $45,000. | *Not Classified in Plan; Not Entitled to Vote*<br><br>Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Effective Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. Furthermore, all fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid pursuant to § 11.1 of the Plan. | 100% |
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.<br><br>The Debtor estimates that the amount of Allowed Priority Tax Claims will be $0.00. | *Not Classified in Plan; Not Entitled to Vote*<br><br>Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtor; or (c) in four Cash payments commencing on or before June 1, 2019 and continuing in three additional, annual installments thereafter on or before May 31st of years 2020-2021, respectively, in an aggregate amount equal to such Allowed Priority Tax Claim (less any payments made by the Debtor with respect thereto during the Chapter 11 Case) together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code. | 100% |
| *Class 1: Secured Tax Claims*<br><br>Class 1 consists of all Allowed Secured Tax Claims as determined pursuant to section 506(a) of the Bankruptcy Code. | *Impaired; Entitled to Vote*<br><br>Each holder of an Allowed Secured Tax Claim, shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtor: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| The Debtor estimates that the amount of Allowed Class 1 Claims will be $49,900.<br><br>For purposes of voting, each holder of an Allowed Secured Tax Claim shall be considered to be the sole member of a separate Class. | Reorganized Debtor; or (c) in four Cash payments commencing on or before June 1, 2019 and continuing in three additional, annual installments thereafter on or before May 31st of years 2020-2022, respectively, in an aggregate amount equal to such Allowed Secured Tax Claim (less any payments made by the Debtor with respect thereto during the Chapter 11 Case) together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code. Each holder of an Allowed Secured Tax claim shall retain its existing liens, privileges and encumbrances, which shall retain the same validity, priority and extent that existed on the Petition Date. | |
| *Class 2: First Secured Claim of TruPoint (secured by Debtor's home)*<br><br>Class 2 consists of the first Allowed Secured Claim of TruPoint.<br><br>The Debtor estimates that the amount of the Allowed Class 2 Claim is $589,535 | *Not Impaired; Not Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor upon the same terms and conditions as set forth in the Debtor's pre-petition loan agreement with TruPoint. TruPoint shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is satisfied as set forth in the Plan. | 100% |
| *Class 3: Second Secured Claim of TruPoint (secured by Debtor's 2014 GMC Yukon)*<br><br>Class 3 consists of the second Allowed Secured Claim of TruPoint.<br><br>The Debtor estimates that the amount of the Allowed Class 3 Claim is $14,850. | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in the amount of $14,843.32, less any payments made by the Debtor to TruPoint with respect to such Claim during the Chapter 11 Case. Payments on account of TruPoint's second Allowed Secured Claim shall begin in the first full calendar month following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 5.279% per annum, over 60 months with no prepayment penalty. TruPoint shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 3 Claim is satisfied as set forth in the Plan. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 4: Secured Claim of Schultz*<br><br>Class 4 consists of the Allowed Secured Claim of Schultz.<br><br>The Debtor estimates that the amount of the Allowed Class 4 Claim is $1,500,000. | *Impaired; Entitled to Vote*<br><br>The Allowed Secured Claim of Schultz shall be treated as a secured obligation of the Reorganized Debtor in the amount of $200,000, which shall be paid on or before December 31, 2020 or as otherwise agreed by Schultz and the Reorganized Debtor. Schultz shall retain their lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code as to the Aldi Property until their Allowed Class 4 Claim is satisfied as set forth in the Plan. Upon the Effective Date, the lien held by Schultz on the Airport Road Property shall be deemed released. Once the Allowed Secured Claim of Schultz is satisfied, the lien held by Schultz on the Aldi Property shall also be deemed released. The Reorganized Debtor may seek such orders from the Bankruptcy Court as are necessary following occurrence of the Effective Date to effectuate the releases set forth in section 3.4.2 of the Plan. | 100% |
| *Class 5: Secured Claim of HomeTrust*<br><br>Class 5 consists of the Allowed Secured Claim of HomeTrust.<br><br>The Debtor estimates that the amount of the Allowed Class 5 Claim is $3,000,000. | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtor in an amount: (i) up to the value of the collateral securing the Claim as determined by the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code, or (ii) as otherwise agreed upon by the Debtor and HomeTrust, less any payments made by the Debtor to HomeTrust during the Chapter 11 Case.<br><br>Within 14 days after the Confirmation Date, the Airport Road Property and the Rockwood Road Property shall be surrendered to HomeTrust by the Reorganized Debtor in partial satisfaction of the Allowed Class 5 Claim in an amount as determined pursuant to the Debtor's Motion for Valuation of Real Property. After a credit for the partial surrender of the HomeTrust Collateral, the remaining Allowed Secured Claim of HomeTrust shall be paid in equal monthly installments of principal and interest, with interest at 6% per annum. Said payments shall begin in the first full calendar month following the Effective Date and continue for 240 months with no prepayment penalty. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | HomeTrust shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code on the Orange Street Property and the Aldi Property until its Allowed Class 5 Claim is satisfied as set forth in the Plan. | |
| *Class 6: Unsecured Convenience Claims*<br><br>Class 6 consists of all Allowed General Unsecured Claims in amounts of $250 or less each. Any creditor holding an allowed Claim may opt into Class 6.<br><br>The Debtor estimates that the amount of the Allowed Class 6 Claim is $1,900. | *Impaired; Entitled to Vote*<br><br>Holders of Allowed Class 6 Claims will be paid the full amount of their Allowed Unsecured Claims as of the Petition Date, not to exceed $250 each, in a single distribution within thirty days following the Effective Date of the Plan in full satisfaction of such Claim. | 100% |
| *Class 7: General Unsecured Claims*<br><br>Class 7 consists Allowed General Unsecured Claims, including any Allowed Unsecured Claims not otherwise classified in this Plan.<br><br>The Debtor estimates that the amount of the Allowed Class 7 Claim is $6,500. | *Impaired; Entitled to Vote*<br><br>These Claims shall be treated as unsecured obligations of the Reorganized Debtor. If not sooner paid, each holder of an Allowed Unsecured Claim shall be paid in three equal, annual installments of principal and interest, with interest at 3.25% per annum. The first said payment will be made within the first full calendar month following the Effective Date with the following two annual payments occurring on or before the first and second anniversary of the Effective Date. | 100% |

## ARTICLE IV
## OTHER PROVISIONS OF THE PLAN

A.  **ADMINISTRATIVE BAR DATE**

In accordance with § 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred *before* the Confirmation Date, must be filed and served on the Reorganized Debtor and the Bankruptcy Administrator no later than thirty (30) days after the Effective Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall *not* apply to fees and expenses of Professionals incurred *after* the Effective Date.

B.  **EXECUTORY CONTRACTS**

In accordance with § 5.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases of the Debtor that (1) have not previously been assumed or rejected by the Debtor by Order of the Bankruptcy Court, or (2) are not the subject of a motion to assume/reject pending on the Confirmation Date, shall be deemed ASSUMED by the Debtor.

If not otherwise resolved by the parties, the Bankruptcy Court shall determine any dispute pertaining to the assumption and assignment of any Assumed Agreement. In accordance with § 5.4 of the Plan and except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the earlier of (1) the date of service of notice of entry of an order of the Bankruptcy Court approving such rejection, or (2) the date of service of notice of the Confirmation Date, if such executory contract or unexpired lease has been rejected pursuant to the Plan. Any Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtor, the Estate, and the Reorganized Debtor.

C.  **RETAINED CAUSES OF ACTION**

Except as otherwise specifically provided in the Plan, the Reorganized Debtor shall retain all rights and is authorized to commence and pursue, as the Reorganized Debtor deems appropriate, any and all claims, causes of action, objections, and defenses, including, but not limited to, Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Case, and including but not limited to, the claims and causes of action specified in the Plan or in any Plan exhibit.

D.  **DISTRIBUTIONS**

All Distributions made under the Plan will be made as outlined above and as set forth specifically in Articles 3 and 6 of the Plan.

E.  **OBJECTIONS TO CLAIMS**

Following the Effective Date, the Reorganized Debtor shall be authorized to object to, or to succeed or otherwise join any objection filed by the Debtor prior to the Effective Date, Claims so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan.  Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by *ex parte* motion by the Reorganized Debtor.  An objection to the allowance of a Claim by the Reorganized Debtor must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtor filed after the Confirmation Date shall be automatically disallowed as a late-filed claim, without any action by the Reorganized Debtor, unless and until the party filing such Claim obtains (i) the written consent of the Reorganized Debtor to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Reorganized Debtor that permits the late filing of the Claim, in which event, the Reorganized Debtor shall have 120 days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Reorganized Debtor.

Prior to the Effective Date, the Debtor shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against it as the Debtor may choose.  From and after the Effective Date, the Reorganized Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims.  Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party and the Reorganized Debtor.  If the Claimant whose Claim was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding Claimant without further notice or hearing.  All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in § 102(1) of the Bankruptcy Code).

F.  **MISCELLANEOUS**

   1.  **Consummation – Retention of Jurisdiction**

Consummation of the Plan consists of satisfaction of any and all conditions to the effectiveness of the Plan.  Pursuant to Article 12 of the Plan, the Bankruptcy Court will retain jurisdiction after Confirmation of the Plan to resolve all outstanding matters in the Chapter 11 Case and with respect to the fulfillment of the obligations of the Reorganized Debtor under the Plan.

   2.  **Discharge**

(a)  ***Discharge of the Debtor.***  The consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any nature whatsoever against the Debtor and the Estate. The Debtor shall be entitled to move for entry of a discharge pursuant § 1141 of the Bankruptcy

Code. If such discharge is approved by Order of the Bankruptcy Court (the "Discharge Order"), the Debtor shall be deemed discharged and released pursuant to § 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the date of the Discharge Order, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under § 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under § 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt has accepted this Plan.

    *(b)*  ***Effect of Discharge.***  The Discharge Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Debtor and the Estate, except as otherwise specifically provided in this Plan. Upon the entry of the Discharge Order, as to every discharged Claim and other debt of the Debtor, the holder of such Claim or other debt of the Debtor shall be permanently enjoined and precluded from asserting against the Reorganized Debtor, or against his assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtor based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the entry of the Discharge Order except as expressly set forth in the Plan. In the event that, after entry of the Discharge Order, any Person asserts, against the Reorganized Debtor or any of his subsidiaries or affiliates, any right to payment or equitable remedy for breach of performance which gives rise to a right of payment, which right was not asserted prior to the entry of the Discharge Order but is based on any act, fact, event, occurrence, or omission, by or relating to the Debtor as they existed before the entry of the Discharge Order, and in the further event that such right is determined by the Bankruptcy Court (a) not to have been discharged pursuant to the provisions of § 1141 of the Bankruptcy Code and this Plan, and (b) that such right may be asserted against the Reorganized Debtor, then, in such circumstances the holder of such right shall be entitled to receive from the Reorganized Debtor value equivalent to that such holder would have received if such right had been asserted against the Debtor before the Confirmation Date and only to the extent such right would have been an Allowed Claim. Nothing in the Plan, this Disclosure Statement, or any Confirmation Order shall have the effect of excepting from discharge any Claim that is or would be discharged pursuant to § 1141 of the Bankruptcy Code or the Plan.

  **3.**  **Release of Certain Claims and Actions; Related Injunction**

As of and on the Confirmation Date, all Persons who have held, hold, or may hold Claims against the Debtor and/or the Estate shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Debtor and/or the Estate, except as otherwise provided for in the Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to nonperformance under the Plan. The Confirmation Order shall constitute a permanent injunction effectuating these releases, such that all Persons who have held, hold, or may hold Claims against the Debtor and/or the Estate shall be expressly prohibited from taking any action to enforce such Claims against the Reorganized Debtor or his property, or any transferee of such property.

  **4.**  **Conditions Precedent to Confirmation**

The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order.

  **5.**  **Conditions Precedent to the Effective Date**

The Plan shall not become effective and operative unless and until the Effective Date occurs. The Effective Date shall occur upon the earlier of: (i) the Business Day that is 30 days after entry of the Confirmation Order; or (b) satisfaction of the other conditions set forth in Article 10 of the Plan are satisfied.

## ARTICLE V
## CONFIRMATION OF THE PLAN

  **A.**  **FEASIBILITY**

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor unless liquidation is contemplated under the Plan. In connection therewith, the Debtor is confident that there will be sufficient funds available to satisfy the minimum distributions required under § 1129(a)(9) of the Bankruptcy Code and the obligations of the Reorganized Debtor from the sources identified in the Plan, including, but not necessarily limited to, the Debtor's projected disposable income. A calculation of the Debtor's post-confirmation projected income and expenses is attached hereto as Exhibit B.

  **B.**  **ACCEPTANCE**

As a condition to Confirmation of the Plan, § 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan. In general, a class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash.

The Bankruptcy Code defines acceptance of a plan (a) by a class of creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests. Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan.

Under § 1126(f) of the Bankruptcy Code, classes of Allowed Claims that are not "impaired" under the Plan are conclusively deemed to have accepted the Plan. Under § 1126(g) of the Bankruptcy Code, classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired pursuant to the Plan, if any.

  **C.**  **NON-ACCEPTANCE AND CRAM DOWN**

If any Class of impaired Claims fails to accept the Plan, the Debtor will seek to effect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under § 1129(b) of the Bankruptcy Code. The Debtor also reserves the right to amend the Plan and request the Bankruptcy Court to confirm the Plan as further amended. If an amendment to the Plan

is material, the Debtor may have to re-solicit acceptances from any Class negatively affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan.

The Plan's treatment of Classes is consistent with the foregoing. Consequently, the Debtor believes that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to § 1129(b) of the Bankruptcy Code, the Debtor will seek Confirmation of the Plan, notwithstanding the possible rejection of the Plan by holders of Claims in any class.

D.  **BEST INTERESTS TEST - - LIQUIDATION ANALYSIS**

Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find that each member of an impaired class of creditors has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such creditor or interest holder would have received or retained if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan complies with this "best interests" test.

To determine what Creditors would receive if the Debtor's Estate were liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets must be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets. The Estate's interest would necessarily be reduced by the amount of any secured claims, the costs and expenses of liquidation, and such additional administrative or priority Claims that may result from the liquidation of the Estate assets. These calculations are set forth in a hypothetical liquidation analysis attached hereto as Exhibit C.

The Debtor asserts that conversion of the Chapter 11 Case to a case administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would involve greater expense and risk than the reorganization contemplated by the Plan. For example, conversion of the Chapter 11 Case would require the appointment of a trustee to conduct the liquidation of the Estate. Such a trustee would likely have limited knowledge of the Chapter 11 Case and the Debtor's records, assets, or business affairs. The fees charged by a Chapter 7 trustee and any professionals he or she would hire (such as legal counsel, accountants, appraisers, brokers, and the like) could impose additional administrative costs on the Estate that will not be incurred under the Plan, and which would be paid ahead of allowed administrative and priority Claims. When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and retention of the trustee's professionals, distributions to Creditors that would otherwise be made on or after the Effective Date of the Plan necessarily would be delayed for an indefinite period.

Note that Exhibit C reflects a hypothetical liquidation analysis of the Debtor's Estate. This analysis is based on assumptions that the Debtor believes to be reasonable based on the best information available. However, there are economic, legal, and other uncertainties that could change the forecasted results in an actual liquidation.

Creditors will receive more under the Plan than they would receive in a Chapter 7 liquidation. Accordingly, the Debtor believes that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

## ARTICLE VI
## MATERIAL UNCERTANITIES AND RISK FACTORS

Holders of Claims against the Debtor and the Estate should read and carefully consider the risk factors set forth below, as well as other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated herein).  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

A.  **CERTAIN DISPUTED CLAIMS**

The feasibility of the Plan is predicated upon the levels of the Claims not being materially in excess of the amounts estimated herein and in the Plan.  If such claims are substantially in excess of the estimated amounts, the Debtor's ability to satisfy the payment obligations under the Plan could be impacted.  Moreover, the stated amounts of Claims in each Class listed above are merely estimates based on the amounts listed on the Debtor's Schedules.  All amounts are subject to change upon the completion of the claims review and objection process.

B.  **CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE**

As more fully discussed in the Plan, if certain conditions precedent to Confirmation and the Effective Date are not satisfied, the Plan may be withdrawn and the Confirmation Order vacated.

C.  **CERTAIN TAX MATTERS**

The Debtor is unaware of any material federal income tax consequences to the Debtor or the holders of Claims resulting from the Plan.  However, nothing in the Plan or the Disclosure Statement should be construed as a representation, warranty, or advice concerning any such tax consequences.

## ARTICLE VII
## CONCLUSION

For the reasons set forth in this Disclosure Statement, the Debtor believes that confirmation and consummation of the Plan is preferable to all other alternatives.  The Debtor thus urges all Creditors entitled to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received by _____, 2018.

Dated:  Charlotte, North Carolina
     October 23, 2018

                                          Respectfully submitted,

                                                */s/ George B. Hyler*
                                                George B. Hyler, Jr

**MOON WRIGHT & HOUSTON, PLLC**

*/s/ Richard S. Wright*
Richard S. Wright (Bar No. 24622)
Cole Hayes (Bar No. 44443)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
*Counsel for the Debtor*